───────────────────────────────

GEORGE COTTON, 04-B-0772,

       Petitioner,

    -v-                              08-CV-0453(MAT)
                                                **ORDER**

SUPERINTENDENT,
WENDE CORRECTIONAL FACILITY,

       Respondent.

───────────────────────────────

## I.   Introduction

*Pro se* petitioner George Cotton ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Supreme Court of, *inter alia*, Criminal Possession of a Weapon in the Second Degree (former N.Y. Penal L. § 265.03(2)) entered on March 11, 2004, following a jury trial before Justice Francis A. Affronti. Petitioner is currently serving a determinate sentence of imprisonment of twenty years.

## II.  Factual Background and Procedural History

On March 28, 2002, petitioner shot to death rival drug dealer Chad Campbell ("Campbell" or "the victim") after Campbell had bested petitioner in a fist fight a week earlier. Police recovered shell casings at the scene and bullet casings from the victim's body, but no perpetrator was arrested in the months immediately following Campbell's murder. Approximately one year later, Rochester police pulled over the vehicle petitioner was driving for

a traffic violation. Police conducted an inventory search and recovered a 9 millimeter handgun from the center console of petitioner's car. Testing the ballistics of the gun determined that it was the weapon used in Campbell's murder. Trial Tr. 337-43, 405-11, 467-69, 476-77, 510, 517, 520, 542.

Petitioner was charged in a seven-count indictment with two counts each of Murder in the Second Degree (N.Y. Penal L. § 125.25(1), (2)), Criminal Possession of a Weapon in the Second Degree (N.Y. Penal L. § 265.03(2)), Criminal Possession of a Weapon in the Third Degree (N.Y. Penal L. § 265.02(4)); and one count of Suspended Registration (N.Y. Veh. & Traf. L. § 512). Following a jury trial, petitioner was acquitted of the murder of Chad Campbell but found guilty of two counts of third-degree weapon possession, one count of second-degree weapon possession, and one count of fourth-degree weapon possession (as a lesser-included offense of second-degree weapon possession). Trial Tr. 662-663.

At sentencing, the trial court dismissed the jury verdict for fourth-degree weapon possession as an inclusory, concurrent offense of third-degree weapon possession. Petitioner was then sentenced as a second felony offender to concurrent and consecutive terms of imprisonment totaling twenty years, with five years of post-release supervision. Sentencing Tr. 8, 18-22.

Petitioner, through counsel, filed a brief in the Appellate Division, Fourth Department, raising six issues for appeal: (1) the

jury pool violated petitioner's right to a pool drawn from a fair cross section of the community; (2) the trial court erred in charging the statutory presumption contained in N.Y. Penal L. § 265.15(4); (3) legally insufficient evidence to support the conviction and the verdict was against the weight of the evidence; (4) the trial court should have suppressed the handgun found in petitioner's vehicle; (5) the trial court erred in imposing consecutive sentences; and (6) the sentence was harsh and excessive. <u>See</u> Respondent's Appendix ("Appx.") A. The Appellate Division unanimously affirmed the judgment of conviction. <u>People v. Cotton</u>, 38 A.D.3d 1189 (4th Dept. 2007). Petitioner then sought leave to appeal to the New York Court of Appeals on the jury pool, statutory presumption, and legal sufficiency issues. Appx. H. Leave was denied on May 4, 2007. Appx. K.

On June 19, 2008, petitioner filed the instant petition for habeas corpus (Dkt. #1) pursuant to 28 U.S.C. § 2254, wherein he raises the same claims as he did on direct appeal. Petition ("Pet.") ¶ 22(A)-(D) & Attach. The respondent has submitted an answer and memorandum of law in opposition to the petition (Dkt. ##10, 11).

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

#### 2. Exhaustion Requirement and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to

protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been fairly presented to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice, i.e., that the petitioner is actually innocent. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### 3.   Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state

court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent a showing of cause for the default and actual prejudice attributable thereto, or a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**B.    Merits of the Petition**

**1.    Jury Pool not a Fair Cross Section (Ground One)**

Petitioner first contends that the trial court erred in failing to dismiss the jury pool "as it violated [his] rights to [a] pool drawn from a fair cross section of the community." Pet. ¶ 22(A). The Appellate Division held that petitioner's motion to dismiss the jury pool "failed to set forth sufficient facts demonstrating a systematic exclusion of African-Americans from the jury pool." <u>Cotton</u>, 38 A.D.3d at 1189.

"[T]he Sixth Amendment requires that jury panels be drawn from a source representing a 'fair cross section' of the community in which the defendant is tried." <u>U.S. v. Jackman</u>, 46 F.3d 1240 (2d Cir. 1995) (quoting <u>Taylor v. Louisiana</u>, 419 U.S. 522, 536 (1975)). "[T]his fair cross section requirement applies only to the large jury pool involving the source of the jurors and not to the trial petit jury. <u>Concepcion v. U.S.</u>, 181 F.Supp.2d 206, 226 (E.D.N.Y. 2002) (citing <u>Taylor</u>, 419 U.S. at 538) ("A defendant is not entitled to a jury of any particular composition"). Put another way, the Sixth Amendment guarantees only that the defendant will have the possibility of a jury that reflects a fair cross-section of the community. <u>Roman v. Abrams</u>, 822 F.2d 214, 229 (2d Cir. 1987).

To establish a *prima facie* case of a viable "fair cross section" claim under the Sixth Amendment, the petitioner must

demonstrate that the under-representation of the racial the group claimed to be excluded is the result of "systematic exclusion of the group in the jury selection process." <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979). Specifically, the petitioner must show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." <u>Duren</u>, 439 U.S. at 364.

The record reflects that after the jury pool had been brought in the courtroom, two of the fifty prospective jurors appeared to be African-American. Defense counsel then moved for an order dismissing the jury panel citing various constitutional and statutory provisions.[1] Appx. B at 83-91. The trial court denied petitioner's motion. T. 6, 26-31. A second panel of jurors entered the courtroom the following day, and defense counsel renewed his motion where two of twenty-fve potential jurors were African-American. The trial court again denied counsel's application. T. 218-219.

---

[1] In support of his motion, petitioner cited to the U.S. Census figures for the year 2000, which provided that the population of African-Americans in Monroe County was 13.7%. He also included supporting affidavits from fourteen Monroe County Public Defenders to show a regular pattern of disproportionately small amounts of African-Americans on jury panels. Appx B at 92-193.

Based on a review of the record I find that petitioner has not established a *prima facie* violation of the Sixth Amendment.

Petitioner has met the first requirement of the Duren standard, i.e., that African-Americans are a "distinctive" group in the community. See U.S. v. Jackman, 46 F.3d 1240, 1246 (2d Cir. 1995). I do not find, however, that underrepresentation is present on the record before me.

As found by the trial court, two of the first fifty jurors were African-American, constituting approximately 4% of the jury pool. In the second set of twenty-five jurors, two were African-American, or 8% of the jury pool.[2] Considering petitioner's assertion that African-Americans make up 13.7% of the population of Monroe County (utilizing the 2000 U.S. Census figures), the absolute disparity between the percentage of African-Americans in the community and those present in the courtroom as prospective jurors among both jury pools, i.e., four African-Americans out of seventy-five individuals, is 8.4%.

Although the appropriate measure would be to adjust the percentage of the total African-American population of Monroe County to exclude minors ineligible to vote, see Rioux, 97 F.3d at 658, the Court need not do so here, as "several federal courts of appeals have required the absolute disparity to meet a 10%

---

[2] The respondent has utilized an "absolute disparity" approach in its answering memorandum. "The absolute disparity method measures the difference between the group's representation in the general population" and the relevant jury pool. U.S. v. Rioux, 97 F.3d 648, 655 (2d Cir. 1996).

threshold before finding unfair representation." U.S. v. Barlow, --
-F.Supp.2d ----, 2010 WL 3118960 at *29 (E.D.N.Y. 2010) (citing
United States v. Phillips, 239 F.3d 829, 842 (7th Cir. 2001) ("[W]e
have noted that a discrepancy of less than ten percent alone is not
enough to demonstrate unfair or unreasonable representation of
blacks on the venire." (citation and quotation omitted); United
States v. Grisham, 63 F.3d 1074, 1078-79 (11th Cir. 1995) ("If the
absolute disparity ... is 10 percent or less, the second element is
not satisfied.")); see, e.g., Ramseur v. Beyer, 983 F.2d 1215 (3rd
Cir. 1992) (en banc), cert. denied, 508 U.S. 947 (1993) ("Courts
addressing the question of whether a given absolute disparity
constitutes 'substantial underrepresentation' have held that
absolute disparities between 2.0% and 11.5% do not constitute
substantial underrepresentation") (collecting cases); U.S. v.
McAnderson, 914 F.2d 934, 941 (7th Cir. 1990)(absolute disparity of
8% *de minimus*); U.S. v. Baker, 611 F2d 1066, 1069-70 (5th Cir.
1980) (8.69% was not "constitutionally impermissible disparity").

Even assuming that petitioner has shown a substantial
disparity between the percentage of African-Americans in the
community and the percentage of African-Americans present in the
courtroom as prospective jurors, he nonetheless fails to establish
the remaining Duren requirement of systematic exclusion. See U.S.
v. Joyner, 201 F.3d 61, 75 (2d Cir. 2000) (finding that defendant
failed to establish *prima facie* case of systematic exclusion, where

the venire only contained one African-American out of 500 jurors).
In Joyner, the defendant argued that his Sixth Amendment right to
a jury of his peers was violated as the venire contained only one
African-American out of 500 prospective jurors. The Second Circuit
found that the defendant "failed to establish a *prima facie* case
because he made absolutely no showing that African-Americans were
systematically excluded or that the district court's use of voter
registration and motor vehicle bureau lists to select the venire
result[ed] in unfair underrepresentation." Id. (citing Duren v.
Missouri, 439 U.S. at 364); Rioux, 97 F.3d at 655-56; see also
Johnson v. United States, 10 F.Supp.2d 390, 392 (S.D.N.Y. 1998)
(rejecting "fair cross section" claim where defendant presented
"nothing in support of his claim that the jury selection process
utilized to obtain jurors for his trial did not afford him the
opportunity" for a representative jury venire) (citing United
States v. Jackman, 46 F.3d 1240, 1244 (2d Cir. 1995)). Similarly,
petitioner has not explained how the jury pool selection process
systematically excludes African-Americans from the lists of
prospective jurors in Monroe County.

Accordingly, petitioner has failed to establish all three
elements of the Duren test, and has thus not set forth a *prima
facie* case of a violation of the Sixth Amendment's fair cross
section requirement. His claim is therefore denied. See United
States v. Schlesinger, 360 F.Supp.2d 512, 527 (E.D.N.Y. 2005)

(rejecting "fair cross section" claim on the basis that defendant could not show unfair underrepresentation or systematic exclusion).

## 2. **Use of State Statutory Presumption (Ground Two)**

Petitioner next avers that the trial court erred in allowing a state statutory presumption against him with respect to his conviction for Criminal Possession of a Weapon in the Second Degree. Pet. ¶ 22(B). The Appellate Division held that the presumption was not unconstitutional on its face or as applied to petitioner. Cotton, 38 A.D.3d at 1189.

The Due Process clause of the Fourteenth Amendment protects a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Because of this burden on the state to prove every element of a crime beyond a reasonable doubt, instructions which a jury could construe as creating an "irrebuttable direction" or a mandatory, burden-shifting presumption on the issue of intent violate due process where intent is an element of the crime charged. Sandstrom v. Montana, 442 U.S. 510 (1979).

The threshold inquiry in determining whether a jury instruction unconstitutionally shifts a burden to the defendant is to determine whether the presumption is "permissive" or "mandatory." Ulster County Court v. Allen, 442 U.S. 140, 157-163 (1979). See also Sandstrom, 442 U.S. at 514; Francis v. Franklin,

471 U.S. 307, 314 (1984). As the Supreme Court explained in <u>Francis</u> <u>v. Franklin</u>, "[a] mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves certain facts, but does not require the jury to draw that conclusion." 471 U.S. at 314 (footnotes omitted). Further, unlike a mandatory presumption, "[a] permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." <u>Id.</u> at 314-315 (citing <u>Allen</u>, 442 U.S. at 157-163). In determining whether a presumption is permissive or mandatory, the court must determine how a reasonable juror might have interpreted the instruction. <u>Francis</u>, 471 U.S. at 316. Furthermore, an analysis should focus on the specific language challenged. <u>Id.</u> at 315.

Here, petitioner was charged with Criminal Possession of a Weapon in the Second Degree (N.Y. Penal L. § 265.03(2)) for knowingly possessing a loaded firearm (a 9 millimeter handgun) with the intent to use it unlawfully against Campbell. Appx. B at 8. N.Y. Penal L. § 265.15(4) reads, "[t]he possession by any person of any ... weapon ... is presumptive evidence of intent to use the same unlawfully against another." N.Y. Penal L. § 265.15(4). In reading the final charge to the jury, the trial court read the presumption set forth in section 265.15(4):

> Possession by any person of any weapon designed for use primarily as a weapon is presumptive evidence of intent to use the same unlawfully against another. *What that means is if the People have proven beyond a reasonable doubt that the defendant possessed a 9-milimeter handgun, then you may but you are not required to infer* from that fact that he did so with the intent to use the same unlawfully against another person.

Trial Tr. 631-632 (emphasis added).

Here, the trial court clearly took care to ensure that the jury understood that the presumption of intent on the weapons charge was permissive only. Moreover, the permissive presumption contained in N.Y. Penal L. ¶ 265.15 was rational as applied to the facts of petitioner's case. See <u>Allen</u>, 442 U.S. 140 at 163.

The trial evidence revealed that a week before Campbell's murder, petitioner lost to him in a fist fight that ensued over drug territory. On the day of the murder, petitioner returned to confront Campbell, armed with a loaded 9 millimeter pistol, which he used to shoot Campbell six times before Campbell could draw his gun from his pocket. Trial Tr. 337-43, 542.

Although the jury was entitled to conclude that petitioner was justified in shooting Campbell (as petitioner was acquitted of the second-degree murder charge), that justification was not determinative of the separate criminal liability for weapon possession under New York state law. See <u>People v. Pons</u>, 68 N.Y.2d 264, 267-268 (1986) ("[I]t does not follow that because defendant was justified in the actual shooting of the weapon under the

particular circumstances existing at that moment, he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting."); see also Davis v. Strack, 270 F.3d 111, 134 (2d Cir. 2001) (explaining that under the rule in Pons, "[a] defendant may use his illegally possessed gun only in a manner that falls within the protection of the justification statute and nonetheless be guilty of criminal possession, second degree . . . because, regardless that his actual, ultimate use of the gun might not have been unlawful (because it was justified under § 35.15), he may have harbored intentions to use the gun in other circumstances that would have been unlawful.").

In sum, it would not have been unreasonable for the jury to conclude that petitioner's possession of a weapon inferred an intent to use it unlawfully against Campbell, and the presumption was thus constitutionally sound. See, e.g., James v. Goord, No. 02 Civ. 1174(DC), 2004 WL 1207906, *8 (S.D.N.Y. June 1, 2004) (finding that the presumption under § 265.15 was "plainly applicable" and thus did not provide a basis for habeas relief).

Accordingly, petitioner has not demonstrated that the Appellate Division's determination was contrary to, or an unreasonable application of clearly established Supreme Court law, and habeas relief is denied on this ground.

### 3.   Sufficiency of the Evidence (Ground Three)

Petitioner contends that the evidence was legally insufficient to establish petitioner's guilt of Criminal Possession of a Weapon in the Second Degree. Pet. ¶ 22(C). The Appellate Division held, "[b]y failing to renew his motion to dismiss the indictment at the close of proof, defendant failed to preserve for our review his contention that the evidence is legally insufficient to support the conviction." Cotton, 38 A.D.3d at 1190 (citing People v. Hines, 97 N.Y.2d 56, 61 (2001)).

The New York Court of Appeals has held that the contemporaneous objection rule, codified at New York Crim. Proc. L. § 470.05(2), requires that a motion to dismiss must alert the trial court to the specific deficiency alleged in order to preserve an insufficiency of the evidence claim for appeal. People v. Gray, 86 N.Y.2d 10, 19 (1995). Moreover, when a defendant presents evidence after the trial court has declined to grant a motion to dismiss under New York Crim. Proc. L. § 290.10(1) following the close of the prosecution's case, he waives his Section 290.10(1) claim. He may not present a legal insufficiency argument through a New York Crim. Proc. L. § 330.30 motion to set aside the verdict unless it has been properly preserved for review during the trial by renewing his motion to dismiss at the close of all the evidence. Hines, 97 N.Y.2d at 61-62; see also People v. Harris, 98 N.Y.2d 452, 492 (2002).

Here, the Appellate Division expressly refused to reach the merits of petitioner's unpreserved claim by invoking New York's contemporaneous objection rule. The Second Circuit has determined that New York Crim. Proc. L. § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); accord, e.g., Mills v. Poole, No. 06-CV-00842A, 2008 WL 2699394, *11 (W.D.N.Y. June 30, 2008) (analyzing factors set forth in Cotto v. Herbert 331 F.3d 217 (2d Cir. 2003); finding petitioner's legal sufficiency claim procedurally barred under the adequate and independent state ground doctrine where petitioner failed to renew his motion to dismiss after he presented evidence).

The Appellate Division's reliance on the contemporaneous objection rule thus constitutes an independent and adequate state ground barring this Court's review of petitioner's claim legal insufficiency claim. Petitioner has not demonstrated cause for the procedural default and resulting prejudice, nor has he alleged that he is actually innocent. Accordingly, this claim must be dismissed as procedurally barred.

### 4. Petitioner's Remaining Claims are Unexhausted (Grounds Four through Six)

In the last three grounds of the petition, petitioner argues that: (1) the handgun recovered from his vehicle during the inventory search should have been suppressed by the trial court;(2)

the trial court erred in imposing consecutive sentences; and (3) the sentence was harsh and excessive. Pet. ¶ 22(D), Attach. Grounds Five and Six. Respondent argues that these claims are unexhausted but procedurally defaulted, pointing out that while petitioner presented these claims to the intermediate state appellate court, he did not present either argument in his leave application to the New York Court of Appeals. Resp't Mem. At 5. Thus, petitioner did not complete one full round of appellate review with regard to those claims, rendering them unexhausted.

The Court agrees.[3] Even if petitioner were to return to state court in an attempt to exhaust them, however, he would face an absence of corrective process. The claims must therefore be deemed exhausted because petitioner is procedurally barred from presentation to a state court. A federal claim is procedurally defaulted when a prisoner has "failed to meet the State's procedural requirements" for presenting it and has therefore "deprived the state courts of an opportunity to address [the claim] in the first instance." Coleman, 501 U.S. at 732. "For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state

---

[3] The Court is conscious of the fact that petitioner's Fourth Amendment and sentencing claims are generally not cognizable on habeas review. See, Stone v. Powell, 428 U.S. 465 (1976)(where states had provided opportunities for full and fair litigation of Fourth Amendment claims, the Constitution did not require the granting of federal habeas corpus relief); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)(A challenge to the term of a sentence is not a cognizable constitutional issue if the sentence falls within the statutory range). Because petitioner's claims are subject to a procedural bar, however, a full discussion of those issues not warranted here.

court would hold the claim procedurally barred.'" <u>Grey v. Hoke</u>, 933
F.2d at 120 (citing <u>Harris v. Reed</u>, 489 U.S. at 263 n.9).

By statute, New York law used to specifically provide for only
a single application for direct review. <u>Spence v. Superintendent,
Great Meadow Corr. Fac.</u>, 219 F.3d 162, 170 (2d Cir. 2000) (relying
on former New York Rules for the Court of Appeals § 500.10(a)
(discussing leave applications for criminal appeals)). N.Y. Rules
for the Court of Appeals § 500.10 has since been amended, and
criminal leave applications are now addressed in N.Y. R. Ct.
§ 500.20. <u>Accord, e.g.</u>, <u>Colon v. Connell</u>, No. 07 Civ.
7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9,
2009). Although Rule 500.20 "does not specifically state that
there may be only one application for appeal, <u>see</u> N.Y. R. Ct. §
500.20, such a restriction may be inferred," since "[b]oth Rule
500.20(d) and CPL § 460.10(5) provide a 30-day window for any such
application to be filed; this time limit would be meaningless were
multiple applications permitted ." <u>Colon</u>, 2009 WL 2002036, at *6
n.4. In addition, N.Y. Court Rule 500.20(d) "states that a request
for reargument or reconsideration may not raise any new points,
implying that a wholly new request for leave to appeal would be
impermissible." <u>Id.</u> ("Since the petitioner here failed to raise his
claims relating to the search on direct appeal, they are
procedurally barred and not cognizable on habeas review.").

Petitioner has taken his one direct appeal and he cannot again seek leave to appeal this claim in the New York Court of Appeals because he has already made the one request for leave to which he is entitled. See Murray v. Williams, No. 05 Civ. 9438, 2007 WL 430419, at *8 (S.D.N.Y. Feb.8, 2007) (declining to review issue that petitioner had failed to raise on direct appeal) (citing People v. Nesbitt, 211 A.D.2d 490 (1st Dept..1995) (holding that the "[d]enial of the application for permission to appeal by the judge or justice first applied to is final and no new application may thereafter be made to any other judge or justice")); Oquendo v. Senkowski, 452 F.Supp.2d 359, 368 (S.D.N.Y. 2006) (same)); Velazquez v. Poole, 614 F.Supp.2d 284, 319 (E.D.N.Y. 2007) (same).

Moreover, collateral review of petitioner's claim is also barred because "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted petitioner to raise the claim on direct appeal. See N.Y. Crim. Proc. L. § 440.10(2)(c) (mandating that court dismiss claim if sufficient facts appeared on the record to have permitted direct review but defendant unjustifiably failed to raise claim on direct appeal). Because a state court would find petitioner's unexhausted claims procedurally barred from state review, they are deemed exhausted. Grey, 933 F.2d at 120-21.

Ordinarily, federal courts may not review procedurally barred claims unless the petitioner can show both cause for the default

and prejudice resulting therefrom, or that a fundamental miscarriage of justice would occur if the federal court declines to review the habeas claim. See <u>Coleman</u>, 501 U.S. at 749-50; <u>Harris v. Reed</u>, 489 U.S. at 262. Here, petitioner has not alleged cause for the procedural default, or that he is actually innocent of the crimes for which he has been convicted. As a result, petitioner's claims must be dismissed as procedurally barred.

## IV.  Conclusion

For the reasons stated above, George Cotton's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed.  Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).


        **SO ORDERED.**

                                    S/Michael A. Telesca
                        _____
                                    MICHAEL A. TELESCA
                                 United States District Judge

Dated:      September 3, 2010
            Rochester, New York